UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LOR, INC.,
                       Plaintiff,

          -v-

ALLIED WORLD NATIONAL
ASSURANCE COMPANY,
                       Defendant.

20-CV-8187 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

    LOR, Inc. ("LOR") brings suit against its insurer Allied World National Assurance Company ("Allied"), seeking to recover costs from now-resolved litigation in Georgia state court. Allied has filed a counterclaim seeking a declaratory judgment that Allied has no duty to indemnify LOR under the insurance agreement between the parties. LOR now moves for partial dismissal of Allied's counterclaim. For the reasons that follow, the motion to dismiss is granted.

**I.    Background**

    The following facts, drawn from the counterclaim, are presumed true for the purposes of this motion. (*See* Dkt. No. 12.)

    Allied is a New Hampshire insurance company headquartered in New York. LOR is a Georgia corporation headquartered in Georgia. (Dkt. No. 12 ¶¶ 8–9.) In 2010, Allied issued Private Company Professional Liability Package Policy No. 0305-6601 (the "Policy") to LOR for the period of June 2010 to June 2011. (Dkt. No. 12 ¶ 1.) Following the resolution of two lawsuits in Georgia state court, the "2010 Litigation" and "2014 Litigation," LOR sought reimbursement under the Policy for litigation costs. (Dkt. No. 12 ¶ 2.)

    LOR alleged it had incurred more than $10 million in defense costs in connection with the 2010 Litigation and the 2014 Litigation. (Dkt. No. 12 ¶ 3.) Yet Allied refused to reimburse

LOR, asserting that it had no duty to pay for any defense costs in connection with either the 2010 Litigation or the 2014 Litigation.[1]  (Dkt. No. 12 ¶ 5.)  According to Allied, both the 2010 and 2014 Litigation failed to satisfy or were excluded under the terms of the Policy.  (Dkt. No. 12 ¶ 4.)

For the 2010 Litigation, Allied interpreted Section 3(h), under the "Policy's Directors and Officers Liability Coverage" portion of the Policy, to exclude LOR's insurance claim.  (Dkt. No. 12 ¶¶ 13, 26.)  Here is how Section 3(h) appeared in the Policy:[2]

> 3. **EXCLUSIONS**
>
> This policy shall not cover any **Loss** in connection with any **Claim**:
>
> \*\*\*
>
> (h) alleging, arising out of, based upon or attributable to any actual or alleged act or omission of any **Insured Person** serving in any capacity other than as an **Executive** or an **Employee** or an **Outside Entity Insured Person**:
>
>   (i) brought by or on behalf of any **Insured**, other than an **Employee**; provided, however, that this exclusion shall not apply to:
>
>   (ii) any **Claim** brought by an **Insured Person** that is in the form of a cross-claim or third-party claim for contribution or indemnity which is part of, and results directly from, a **Claim** which is not otherwise excluded under the terms of this Coverage Section;
>
>   (iii) a shareholder derivative action, but only if such action is brought and maintained without the solicitation, approval, assistance, active participation or intervention of any **Insured**;

(Dkt. No. 1 ¶ 24; Dkt. No. 12 ¶ 24.)  Allied read Section 3(h) to be inclusive only of the paragraph directly following "(h)."  (Dkt. No. 12 ¶¶ 13–16.)  Since Allied believed the claims against LOR officers in the 2010 Litigation arose from their acting in capacities other than those

---

[1] The Court discusses facts relevant only to the 2010 Litigation because LOR concedes that whether the Policy covered the 2014 Litigation is a question "not appropriate for resolution at this stage of the litigation."  (Dkt. No. 16 at 2.)

[2] There are four more subparagraphs after subparagraph (iii), numbered (iv) through (vii).  (Dkt. No. 12 ¶ 16.)  The next paragraph in the Policy is Section 3(j), which is similarly indented to Section 3(h).  (Dkt. No. 12 ¶ 19.)

of an "Executive," "Employee," or "Outside Entity Insured Person," Allied maintained that it was not obligated to reimburse LOR's litigation costs. (Dkt. No. 12 ¶ 12, 26.)

LOR disagreed with Allied's interpretation of Section 3(h). LOR took the view that Section 3(h) included all the language pictured above, meaning the Policy excluded claims against an insured person working in a capacity other than "Executive," "Employee," or an "Outside Entity Insured Person" only when those claims were "brought by or on behalf of any "Insured, other than an "Employee." (Dkt. No. 12 ¶ 27.) The plaintiffs in the 2010 Litigation were not insureds. *See Rollins v. Rollins*, 755 S.E.2d 727, 729 (Ga. 2014).

LOR filed a complaint on January 15, 2021, asserting breach of contract for Allied's failure to reimburse its defense costs for the 2010 and 2014 Litigation. (Dkt. No. 1.) Allied filed its answer on January 29, 2021 (Dkt. No. 12), and in it asserted a counterclaim requesting the Court to declare that Allied has no duty to defend or indemnify LOR under the Policy for any expenses in connection with the 2010 or 2014 Litigation. (Dkt. No. 12 ¶¶ 38–41.) LOR has moved to partially dismiss the counterclaim under Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 16), arguing that Allied's declaratory judgment claim with respect to the 2010 Litigation fails under the Policy language and reserving its answer to Allied's declaratory judgment claim with respect to the 2014 Litigation. (Dkt. No. 16 at 2 & n. 1.)

**II.    Legal Standard**

"A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." *S & R Dev. Ests., LLC v. Town of Greenburgh*, 336 F. Supp. 3d 300, 307 (S.D.N.Y. 2018) (internal quotation marks omitted). The party facing a motion to dismiss under Rule 12(b)(6) must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In resolving a motion to dismiss, the court "must accept as true all well-pled factual allegations in the [counterclaim] and draw all

3

reasonable inferences in the [defendant's] favor." *Doe v. Indyke*, 457 F. Supp. 3d 278, 282 (S.D.N.Y. 2020) (citing *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014)). That rule does not apply, however, to legal conclusions. *Id.* "Pleadings that offer only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

### III. Discussion

LOR has moved to dismiss that portion of Allied's counterclaim that seeks declaratory relief with respect to the 2010 Litigation. LOR's motion turns on the proper interpretation of Section 3(h). The parties in their briefing also debate over a separate issue: Allied's reformation affirmative defense, which it pleaded in its answer. The Court addresses each of these issues in turn.

#### A. Interpretation of Section 3(h)

Section 3(h) of the Policy, which as written ends with a colon, excludes litigation from coverage if the claims against insureds arise from them acting outside of an insured capacity — as an "Executive," Employee," or "Outside Entity Insured Person." The subparagraph (i) that follows Section 3(h) reads, in relevant part, "brought by or on behalf of any Insured, other than an Employee." Whether subparagraph (i) restricts the exclusion within Section 3(h) to claims brought by insureds other than Employees — LOR's position — or whether all the subparagraphs that follow Section 3(h) compose a separate, distinct Policy exclusion — Allied's position — is what the Court must decide.

#### 1. Choice of Law

The Court must initially determine what law governs the Policy's interpretation. "A federal court exercising diversity jurisdiction must apply the choice of law analysis of the forum state." *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc.*, 449 F.3d 377, 382 (2d Cir.

4

2006) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487 (1941)).  Under New York's choice-of-law rules, "the first step . . . is to determine whether there is an actual conflict between the laws of the jurisdictions involved."  *In re Allstate Ins. Co. (Stolarz),* 81 N.Y.2d 219, 223 (1993).  Allied contends that Georgia law should be applied here.  LOR contends that there is no conflict here between the laws of New York and the laws of Georgia, meaning the Court is free to apply New York law, but agrees that Georgia law should be applied to the extent there is any conflict.

Review of the laws of New York and Georgia reveals no pertinent conflict over how to interpret exclusions in insurance contracts.  New York requires that exclusions in insurance contracts must be in "clear and unmistakable language" and should be "accorded a strict and narrow construction."  *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 311 (1984) (internal quotation marks omitted).  The exclusion must be subject "to no other reasonable interpretation." *Cont'l Cas. Co. v. Rapid-Am. Corp.*, 80 N.Y.2d 640, 652 (1993).  Since duties to defend and indemnify are historically broad, *cf. Ruder & Finn Inc. v. Seaboard Sur. Co.*, 52 N.Y.2d 663, 669 (1981), all ambiguities are resolved in favor of the insured, *see Herald Square Loft Corp. v. Merrimack Mut. Fire Ins. Co.*, 344 F. Supp. 2d 915, 919 (S.D.N.Y. 2004).  In Georgia, "[e]xclusions from coverage sought to be invoked must be strictly construed," and "all ambiguities as to policy exclusions are interpreted in favor of coverage because 'the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms.'"  *Great Am. All. Ins. Co. v. Anderson*, 847 F.3d 1327, 1331–32 (11th Cir. 2017) (citations omitted).

Since there is no actual conflict here, "[c]hoice of law does not matter."  *Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004).  Still, the Court will

proceed with applying Georgia law — under New York's choice of law analysis, any conflicts or differences between New York and Georgia law would require applying Georgia's law since Georgia was the "principal location of the insured risk." *See Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 84 N.Y.2d 309, 318 (1994).

### 2.     Application of Georgia Law

Allied argues that the entirety of Section 3(h) is just the paragraph that immediately follows "(h)."  For the Court to read Section 3(h) as such, Allied concedes that the Court would need to: change the colon at the end of the paragraph to be a semi-colon, so that the following subparagraphs are not read to modify Section 3(h); disregard the extra indent before what is now subparagraph (i); treat what is now subparagraph (i) as Section 3(i), an additional, independent exclusion of the Policy; and re-number the current subparagraphs numbered (ii) through (vii) to begin with "(i)," which would now collectively modify the preceding Section 3(i).  LOR, in turn, asks the Court to read Section 3(h) as written.  LOR asserts that the paragraph following "(h)" is modified by the subparagraphs that follow it because the paragraph ends with a colon.

In Georgia, insurance policy exclusions must be strictly construed against the insurer. *See, e.g.*, *Richards v. Hanover Ins. Co.*, 250 Ga. 613, 615 (1983); *Travelers Indemn. Co. v. Whalley Constr. Co., Inc.,* 287 S.E.2d 226, 229 (Ga. Ct. App. 1982) (collecting cases).  Beyond strictly construing exclusions against the insurer, the Court must also liberally construe any exclusions in favor of the insured.  If an exclusion is not clear and precise, the exclusion "did not occur."  *See Travelers,* 287 S.E.2d at 229 (citing *Mut. Life Ins. Co. v. Bishop*, 209 S.E.2d 223, 225 (Ga. Ct. App. 1974); *Burke v. Life Ins. Co. of Ga.*, 123 S.E.2d 426, 430 (Ga. Ct. App. 1961)).  This is because the "insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms."

*Great Am. All. Ins. Co. v. Anderson*, 847 F.3d 1327, 1332 (11th Cir. 2017) (internal quotation marks and citations omitted).

Strictly reading Section 3(h) in LOR's favor creates a narrow exception: claims against insureds for actions they took outside the capacity of "Executive," "Employee," or "Outside Entity Insured Person" are excluded *only when those claims are brought by an insured other than an "employee."*[3] Subparagraph (i) is naturally read to continue and modify paragraph (h) since paragraph (h) ends with a colon and subparagraph (i) is indented. The plaintiffs who brought claims against LOR officers in the 2010 Litigation were not insureds. So, reading Section 3(h) to create this narrow exception would not entitle Allied to a declaration that it is not required to cover LOR for the 2010 Litigation.

How Allied insists Section 3(h) should be interpreted supports the Court's narrow reading in LOR's favor. Under Allied's interpretation of this contested portion of the Policy, indented subparagraphs would also continue and modify a preceding paragraph ending in a colon. The critical difference is that the modified paragraph would be what is currently subparagraph (i), which would be an independent exclusion formatted similarly to paragraph (h). As Allied recognizes, its interpretation requires reading multiple changes into the Policy. Reading Section 3(h) in this manner is simply not the natural reading of the language. Nor would it reflect a narrow reading, or a reading in favor of the policyholder, as required by Georgia law.

Likely recognizing that a strict reading of Section 3(h) in LOR's favor does not exclude the 2010 Litigation from the Policy's coverage, Allied instead contends that such a reading is unreasonable. Allied correctly points out that the principle of liberally construing insurance

---

[3] The subparagraphs numbered (ii) through (vii) would further restrict this already narrow exclusion since subparagraph (i) ends with "this exclusion shall not apply to," followed by a colon. (Dkt. No. 1 ¶ 24; Dkt. No. 12 ¶ 24.)

contracts in favor of the insured is limited to "*reasonable* interpretations." *Brown v. Assurance Am. Ins. Co.*, 841 S.E.2d 16, 17 (Ga. Ct. App. 2000) (emphasis in original). But Allied's argument for why LOR's strict interpretation of Section 3(h) is unreasonable is unavailing. Allied first relies on the general principle of contract construction in Georgia that contracts should be interpreted to give effect to the intent of the parties, "irrespective of all technical or arbitrary rules of construction." (Dkt. No. 18 at 6 (citing Ga. Code Ann. § 13-2-3 (2010)) (internal quotations omitted)). From here, Allied asserts that the punctuation and formatting mistakes in Section 3(h) are simply "scrivener's errors" and should not disrupt the intent of the parties — which, according to Allied, is not to limit the exclusion within Section 3(h) to only claims brought by insureds. (*See* Dkt. No. 18 at 6–7.)

Allied's argument, however, elides the duty insurers have to define exclusions in clear and explicit terms. The only case cited by Allied in which a Georgia court disregarded scrivener's errors in favor of an insurer is distinguishable because it was not about *exclusions* in the contract. (*See* Dkt. No. 18 at 6.) Instead, this case, *Brown v. Assurance Am. Ins. Co.,* was about whether an automobile insurance provision was in effect on the day of the plaintiff's collision. 841 S.E.2d 15 (Ga. Ct. App. 2000). Moreover, the court in *Brown* was not faced with the multiple alleged scrivener's errors in the insurance contract like the Court is here. All the dates in the insurance contract in *Brown*, except for one handwritten date by the plaintiff's partner, supported the insurer's position that the collision was not covered. *Id.* at 16–17. *Brown* stands in stark contrast to *Michigan Homes, Inc. v. U.S. Fid. & Guar. Co.*, where a Georgia court refused to change one letter — correcting "of" to "or" — in an insurance policy exclusion despite recognizing it to be a likely typographical error. 374 S.E.2d 323, 324 (Ga. Ct. App. 1988).

Allied falls back on arguing that a strict reading of Section 3(h) results in a contract with obvious errors. Specifically, the Policy would skip from Section 3(h) to Section (j), and Section 3(h) would be the only exclusion with a subparagraph continuing the exclusion, as opposed to modifying the exclusion to have exceptions. (*See* Dkt. No. 18 at 8–9.) Though both of these facts are true, "[i]t is the duty of the courts to construe and enforce contracts as made, and not to make them for the parties." *Michigan Homes*, 374 S.E.2d at 324. What Allied asks this Court to do in interpreting Section 3(h) — to read in multiple corrections to punctuation and formatting errors — is "unavailable here where the mistake or negligence is attributable to the [insurance company]." *Id.* (internal quotation marks omitted). Accordingly, the Court concludes that the Policy as written does not exclude coverage of the 2010 Litigation and Allied's request for a declaratory judgment to the contrary is dismissed.

### B.     Allied's Reformation Affirmative Defense

LOR and Allied also debate the merits and timeliness of Allied's affirmative defense of reformation, which Allied pleaded in its answer. (Dkt. No. 12 at 9.). Though LOR urges Allied to dismiss this affirmative defense (Dkt. No. 19 at 5–6), LOR acknowledges that it has not actually moved move to dismiss Allied's affirmative defense of reformation. *Id.* In any event, "[m]otions to strike affirmative defenses . . . are . . . generally disfavored." *E.E.O.C. v. Kelley Drye & Warren, LLP*, No. 10-cv-655, 2011 WL 3163443, at *2 (S.D.N.Y. July 25, 2011). The Court thus refrains at this time from reaching any conclusions about this affirmative defense.

### IV.     Conclusion

For the foregoing reasons, LOR's motion to dismiss in part Allied's declaratory judgment counterclaim is GRANTED.

LOR shall file its answer to the remaining counterclaim within 21 days after the date of this Opinion and Order.

The Clerk of Court is directed to close the motion at Docket Number 15.

SO ORDERED.

Dated: September 15, 2021
       New York, New York

                                            J. PAUL OETKEN
                                          United States District Judge